**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nadine Roy, | No. CV-20-08292-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Nadine Roy's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of social security disability benefits. (Doc. 20). The appeal is fully briefed (Doc. 20, Doc. 26, Doc. 27), and the Court now rules.

**I.    BACKGROUND**

The issues presented in this appeal are whether substantial evidence supports the Administrative Law Judge's ("ALJ") determination that Plaintiff was not disabled from August 15, 2017 to February 21, 2020 and whether the ALJ committed legal error in her analysis. (Doc. 20 at 4, 6, 11, 13).

**a.    Factual Overview**

Plaintiff was 55 years old at the time of her appeal. (Doc. 20 at 4). She has a high school education and past relevant work experience as a cashier. (*Id.*) Plaintiff filed her social security disability claim on October 10, 2017, alleging disabilities beginning on August 15, 2017, including degenerative disc disease, paroxysmal atrial fibrillation,

syncope, orthostatic hypotension, and chronic obstructive pulmonary disease ("COPD"). (*Id.* at 4–5). An ALJ denied Plaintiff's claim on February 21, 2020. (Doc. 19-3 at 24). The SSA Appeals Council denied a request for review of that decision and adopted the ALJ's decision as the agency's final decision. (*Id.* at 2).

### b. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related

symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### c. The ALJ's Application of the Factors

Here, at the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. (Doc. 19-3 at 16).

At the second step, the ALJ determined that Plaintiff's degenerative disc disease, paroxysmal atrial fibrillation, syncope, orthostatic hypotension, and COPD constituted severe impairments under 20 C.F.R. § 404.1520(c). (*Id.* at 16). The ALJ also determined that the rest of Plaintiff's alleged impairments were non-severe. (*Id.* at 17–19).

At the third step, the ALJ determined that Plaintiff's impairments did not meet the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 19). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) "except that she can never climb ladders, ropes, or scaffolds, can frequently climb ramps or stairs, and can frequently balance, stoop, crouch, kneel, or crawl." (*Id.* at 20). The ALJ also found that Plaintiff can only occasionally be exposed to very loud noise, excessive vibration, pulmonary irritants, and poorly ventilated areas, but can never be exposed to dangerous machinery or unprotected heights. (*Id.*) The ALJ also found that Plaintiff cannot drive on the job. (*Id.*)

At the fourth step, the ALJ concluded that Plaintiff is able to complete past relevant work as a cashier, and accordingly, concluded that Plaintiff has not been under a disability since the alleged onset date. (*Id.* at 23–24).

## II.  LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means … such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.  DISCUSSION

Plaintiff raises three claims of error: (1) the ALJ committed legal error by rejecting the opinion of Plaintiff's treating cardiologist Dr. Pareed Aliyar; (2) the ALJ committed legal error by rejecting the testimony of Plaintiff's husband Todd Roy; and (3) the ALJ's RFC finding was not supported by substantial evidence. The Court addresses each in turn.

### a.  Medical Opinion

Plaintiff argues that the ALJ did not give sufficient justification for rejecting Dr. Aliyar's opinion. (Doc. 20 at 6). Dr. Aliyar began treating Plaintiff in October 2016 and

continued to treat Plaintiff through at least October 2019. (Doc. 19-9 at 35; Doc. 19-10 at 102–06; Doc. 19-11 at 1–2). While not citing to the records using Dr. Aliyar's name, the ALJ cites to more than ten of Dr. Aliyar's treatment records throughout her discussion of Plaintiff's medical evidence. For example, the ALJ notes that "multiple physical examinations show of a normal gait, with normal neurological findings," citing Dr. Aliyar's progress notes from March 2018 (Doc. 19-10 at 56), October 2019 (Doc. 19-11 at 2), and November 2019 (*id.* at 145). The ALJ also cites to Dr. Aliyar's progress notes for her findings that:

> [Plaintiff] had a normal SPECT study with a 76% ejection fraction, and no significant change to her blood pressure. [(Doc. 19-10 at 30)]. While the claimant has reported having some syncope and collapse [to] her providers, the objective medical findings and clinical examinations are not fully supportive [(Doc. 19-11 at 145)]. There is evidence of a negative Romberg test with a steady gait, and that the medication has helped with the symptoms of syncope and collapse [(Doc. 19-10 at 53)]. Importantly, the claimant's Holter monitoring showed no collapse or falls [(*id.* at 56)].

(Doc. 19-3 at 22).

Dr. Aliyar filled out a medical source statement form in April 2019 identifying Plaintiff's diagnoses, claimed symptoms, and job-related limitations. (Doc. 19-10 at 102–06). Dr. Aliyar circled "Abnormal Heart Rhythms" and "Heart Valve Disease" as Plaintiff's cardiac diseases, and wrote "mitral valve, atrial fibrillation" as the "clinical findings, laboratory and test results" indicative of Plaintiff's impairments. (*Id.* at 102). Dr. Aliyar identified Plaintiff's symptoms as nausea, weakness, dizziness, fatigue, palpitations, syncope, and collapse. (*Id.*) Dr. Aliyar further identified that Plaintiff is plagued by emotional difficulties caused by her condition that contribute to the severity of her subjective symptoms. (*Id.* at 103). In response to "Are your patient's claimed symptoms *reasonably consistent* with your patient's diagnosis?" Dr. Aliyar checked "No." (*Id.*)

Regarding Plaintiff's ability to work, Dr. Aliyar opined that Plaintiff has marked limitation of physical activity, is capable of only a low stress job, can sit for about two hours and stand or walk for about two hours in an eight-hour workday, needs to take

unpredictable, unscheduled breaks during work, and needs a job that will permit shifting position from sitting, standing, or walking at will. (*Id.* at 103–04). Dr. Aliyar also indicates that Plaintiff can occasionally lift less than ten pounds, rarely lift ten pounds, and can never lift 20 or more pounds. (*Id.* at 104). Dr. Aliyar further indicates that Plaintiff can only occasionally twist, stoop, bend, and crouch and can never climb ladders or stairs. (*Id.*) Dr. Aliyar notes that Plaintiff's prognosis is "passing out" and "syncope [and] collapse" and in response to a narrative-form question regarding the objective medical evidence to support his opinion, Dr. Aliyar merely notes "patient has been complaining [of a] severe headache [and] dizziness, this is not cardiac related. We have referred patient to neurology." (*Id.* at 105–06).

> The ALJ addressed Dr. Aliyar's opinion as follows:
>> The undersigned finds the opinion of Pareed [Aliyar] has little persuasiveness. Dr. [Aliyar] opined the claimant is capable of a low-stress job at the sedentary exertional level with severe restrictions (9F). This is not supported by the record and not consistent with the medical records which show the claimant's atrial fibrillation is controlled, and her orthostatic hypotension improved with medication. In addition, Dr. [Aliyar] merely checked boxes on a form with minimal explanation, her opinion is vague and imprecise, and the limits proposed are extreme and inconsistent with the record.

(Doc. 19-3 at 23).

Additionally, the ALJ considered two opinions from State agency reviewers Dr. Erika Wavak and Dr. Alicia Blando. As noted by the ALJ, the doctors "each opined the claimant can perform light exertional work, with some limitations to postural functions such as stooping and kneeling, and must avoid most expose to hazards in the workplace." (Doc. 19-3 at 22, citing Doc. 19-4 at 12–14, 38–40). The ALJ found Drs. Wavak and Blando's opinions to be "most persuasive" because the opinions "are supported by the meager objective evidence available to the doctors for their review, and are mostly consistent with the current records which show the claimant has degenerative disc disease." (Doc. 19-3 at 22–23).

The law previously distinguished between the opinions of treating physicians,

examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was known as the "treating physician rule." *See Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001). "In March of 2017, [t]he Social Security Administration amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). The new regulations apply to claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." *Id.*

Furthermore, the ALJ will consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources. *Alonzo*, 2020 WL 1000024, at *3. Contrary to Plaintiff's assertions that the ALJ's "failure to apply all relevant factors is reversible error" (Doc. 20 at 7), under the new regulations, the ALJ must consider and explain how well the medical evidence supports the medical opinion and how consistent the medical opinion is with the record, and may, *but is not required to*, explain how the other factors under § 404.1520c(c)(3)–(5) are considered. 20 C.F.R. § 404.1520c(b)(3).

"When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

In view of the new SSA regulations on treating physician opinions, Dr. Aliyar's

opinion is on equal ground with non-examining physician opinions. To find the ALJ made a materially harmful error, this Court must find that the ALJ's reliance on the non-treating physicians' medical assessments in lieu of Dr. Aliyar's opinion is not supported by and is inconsistent with the medical evidence on record. This Court finds no materially harmful error.

Substantial evidence supports the ALJ's determination that Dr. Wavak's and Dr. Blando's opinions were supported by and consistent with the objective medical evidence. (Doc. 19-3 at 22–23); *see Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) ("The ALJ can meet his burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.") (quotations omitted). The ALJ used the standard set forth at 20 C.F.R. § 404.1520c in evaluating each medical opinion. (Doc. 19-3 at 22–23). The ALJ's decision to rely on Dr. Wavak's and Dr. Blando's opinions over Dr. Aliyar's is supported by the medical evidence. For example, the ALJ noted that Drs. Wavak and Blando "each opined the claimant can perform light exertional work, with some limitations to postural functions such as stooping, kneeling, and must avoid most exposure to hazards in the workplace." (Doc. 19-3 at 22). The ALJ properly determined that these limitations were supported by the record as discussed earlier in the opinion, including diagnostic imaging results from July and December 2018 that show "mild degenerative disc changes at C5-C6" and "mild degenerative disc disease at L5-S1" and "no significant evidence of nerve root impingement or stenosis." (Doc. 19-3 at 21). Further, the ALJ notes that Plaintiff's "treatment has been conservative and routine, suggesting nondebilitating orthopedic issues" (Doc 19-3 at 21, 23), which is also consistent with Drs. Wavak and Blando's opinions that Plaintiff is capable of performing light exertional work (*See* Doc. 19-4 at 12–14; *see also id.* at 38–40).

In contrast, the ALJ determined Dr. Aliyar's opinion was not supported by the medical records, including Dr. Aliyar's own progress notes, nor was it consistent with the other medical evidence in record which indicated Plaintiff's atrial fibrillation condition is

controlled on medication and Plaintiff's Romberg test indicated a steady gait and her Holter monitoring showed no collapse or falls. (Doc. 19-3 at 22); *see Connett v. Barnhart*, 340 F.3d 871, 874-75 (9th Cir. 2003) (finding the fact that a treating physician's opinion was not supported by his own treatment notes was a specific and legitimate reason to not credit the opinion); *Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."). The opinions regarding Plaintiff's capacity and work limitations from both Dr. Wavak's and Dr. Blando's record examinations support the ALJ's conclusion because as noted by the ALJ, "most examinations show a lack of focal deficits, pain, tenderness, or swelling, which establishes her residual exertional capacity and ability to sit, stand, and walk." (*Id.* at 21) Accordingly, this Court finds that the ALJ did not err by rejecting Dr. Aliyar's assessment in favor of the State agency experts' medical findings, and the findings were supported by and consistent with the medical record. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted).

Plaintiff raises additional arguments that the ALJ erred in rejecting Dr. Aliyar's opinion. First, Plaintiff contends that the ALJ erred by rejecting Dr. Aliyar's statement because he "merely checked boxes on a form with minimal explanation." (Doc. 20 at 8). Generally, an ALJ may not reject a treating physician's opinion because it is in a check box, rather than narrative, form. *See Trevizo*, 871 F.3d at 677, n. 4 ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments."); *but see Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds* ("[An] ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.") (internal punctuation and citations omitted). However, here, the ALJ gave specific and legitimate

reasons to reject Dr. Aliyar's opinion statement that are not based on the type of form used. For example, the ALJ noted that Dr. Aliyar's opinion was inconsistent with medical evidence showing Plaintiff's "atrial fibrillation is controlled, and her orthostatic hypotension improved with medication." (Doc. 19-3 at 23). Thus, the Court does not find that the ALJ improperly discredited Dr. Aliyar's opinion based solely on its form.

Next, Plaintiff argues that the ALJ's findings that Dr. Aliyar's opinion was "vague" and "extreme" are conclusory and unsupported by actual reasoning. (Doc. 20 at 8). However, as discussed above, Dr. Aliyar's opinion statement fails to supply any supporting narrative for the conclusions he draws on the form. (*See* Doc. 19-10 at 106). Moreover, contrary to the evidence in the record, Dr. Aliyar limited Plaintiff's capacity to two hours of sitting and two hours of standing or walking in an eight-hour workday (*id.* at 102–06), which the ALJ properly noted is inconsistent and unsupported by the medical evidence in the record (Doc. 19-3 at 23). The Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen*, 749 F.2d at 579.

Finally, Plaintiff argues that the ALJ's finding that Dr. Aliyar's opinion "was not supported by the record and not consistent with the medical records" is unsupported because the ALJ does not cite to anything in the record. (Doc. 20 at 9). However, as discussed at length above, for the majority of the six pages preceding the ALJ's discussion of Dr. Aliyar's opinion, the ALJ specifically recounts the record evidence that supports and undermines the submitted medical opinions. (*See* Doc. 19-3 at 17–22). As such, the Court finds that the ALJ's rejection of Dr. Aliyar's opinion was supported by substantial evidence and not based in legal error. "When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). This is especially true where, as here, the social security application was filed after the abrogation of the "treating source rule." *See* 20 C.F.R. §§ 404.1520c, 416.920c.

Finally, in her reply, Plaintiff argues that 20 C.F.R. § 404.1520c violates her Fifth Amendment right to Due Process by allowing ALJ's to improperly render decisions

without full explaining their rationale for rejecting treating source opinion evidence and lay witness testimony. (Doc. 27 at 1). Plaintiff contends that the new regulations impermissibly insulate ALJ decisions from this Court's scrutiny on appeal. (*Id.* at 2). On this record, the Court will not decide whether a properly promulgated regulation violates Plaintiff's rights where that argument was not raised in her Opening Brief, is not responsive to Defendant's Response Brief, and Defendant has had no opportunity to brief a constitutional issue because it was raised for the first time in a reply brief on appeal.

### b. Lay Testimony

Next, Plaintiff argues that the ALJ improperly rejected the testimony of Todd Roy, Plaintiff's husband. (Doc. 20 at 11).

Mr. Roy completed a Third-Party Functional Report in support of Plaintiff's application for disability benefits. (Doc. 19-3 at 23–30). Mr. Roy stated that Plaintiff "does a few light things around the house when [she is] not dizzy," is able to care for her pets with the help of himself and their daughter, and has no problem with personal care. (*Id.* at 23–24). He further stated that "sometimes she forgets to take her meds" and has trouble cooking because "she gets dizzy…plus she has angina and gets anxiety." (*Id.* at 25). He further stated that she cannot leave the house alone because of her dizziness but is able to shop for groceries with her daughter once per week. (*Id.* at 26). Mr. Roy noted that Plaintiff is able to pay bills, count change, handle a savings account and use a checkbook. (*Id.*) In response to a prompt stating "Check any of the following items the disabled person's illnesses, injuries, or conditions affect," Mr. Roy identified lifting, squatting, bending, standing, reaching, walking, kneeling, talking, hearing, stair climbing, and concentration. (*Id.* at 28). Finally, Mr. Roy states that Plaintiff "has a lot of headaches that make her dizzy. Has fallen on occasion. She gets more chest pains because of her heart. She has a titanium heart valve so when she has angina i[t] gives her a lot of anxiety. She can't do anything when this happens but lie in bed." (*Id.* at 3).

> Regarding third party statements, the ALJ stated as follows:
> > Moreover, the undersigned will not provide any analysis about how statements on issues reserved to the Commissioner were

- 11 -

> considered as such statements are inherently neither valuable nor persuasive to the issue of whether the claimant is disabled or blind under the Act. Herein, the undersigned did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c) and 416.920b(c). Specifically, here, the undersigned has considered but provided no analysis for third party statements (4E).

(Doc. 19-3 at 22). Mr. Roy's statement is identified as Exhibit No. 4E in the administrative record. (*See* Doc. 19-2 at 2).

The applicable regulations require the ALJ to consider testimony from a claimant's family and friends. *See* 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3). The regulations, however, "do not require the ALJ to provide express reasons for rejecting testimony from each lay witness." *Molina*, 674 F.3d at 1114 (clarifying that contrary to the statement in *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), that "[i]f the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness," an ALJ is not required to "discuss every witness's testimony on a[n] individualized, witness-by-witness basis").

Plaintiff argues that the ALJ improperly determined that Mr. Roy's statement contains testimony on issues expressly reserved for the Commissioner under 20 C.F.R. § 404.1520b(c). (Doc. 20 at 12). The Court, however, does not read the ALJ's opinion to say that Mr. Roy's statement was disregarded for that reason. Instead, the ALJ makes a general statement that she will not consider statements opining on issues expressly reserved for the Commissioner and then states that she has considered but will not discuss any of the submitted third party statements. (Doc. 19-3 at 22). As stated above, the ALJ's decision not to provide analysis of Mr. Roy's statement was not made in error. *See Andrews*, 53 F.3d at 1039–40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted).

But even assuming the ALJ's decision to consider but disregard Mr. Roy's statement

was erroneous, the Court concludes that any error was harmless. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015); *Johnson v. Astrue*, No. CV-11-8121-PHX-JAT, 2012 WL 3108838, at *11 (D. Ariz. July 31, 2012) (applying harmless error review to an ALJ's disregard of competent lay witness testimony). The limitations and disabilities contained in Mr. Roy's testimony are consistent with Dr. Aliyar's medical opinion, as noted by Plaintiff (Doc. 20 at 11), which the ALJ found unpersuasive for reasons supported by substantial evidence, as discussed above. At best, the lay witness testimony merely corroborates Dr. Aliyar's properly discredited medical opinion, and, accordingly, the Court finds that this evidence would not have changed the ALJ's disability determination. *See Marsh*, 792 F.3d at 1173 ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'" (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006))).

### c. RFC Assessment

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. (Doc. 20 at 13).

First, Plaintiff contends that the ALJ improperly relied on medical statements from "state agency, non-examining, desktop" reviewers over the medical statement provided by Dr. Aliyar without requesting a consultative examination of Plaintiff. (Doc. 20 at 13). As discussed above in part III.a, the Court finds that the ALJ's decision to rely on the non-examining opinions over Dr. Aliyar's treating source opinion was supported by substantial evidence and free from legal error. The ALJ gave specific and legitimate reasons to rely on Dr. Wavak's and Dr. Blando's opinions and to discount Dr. Aliyar's opinion. As discussed above, the ALJ, noting the inconsistency between Dr. Aliyar's medical opinion and the record evidence as a whole, determined that Dr. Aliyar's opinion regarding Plaintiff's physical capacity was entitled to little weight. (Doc. 19-3 at 23). Instead, the ALJ determined that Dr. Wavak's and Dr. Blando's opinions regarding Plaintiff's physical capacity were more consistent with the objective medical evidence in the record and properly gave them more weight. (*Id.* at 22). *See Tonapetyan*, 242 F.3d at ("When

confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.").

Next, Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ admitted that "supplementation is required to form an adequate RFC" and that the state agency medical reviewers had "meager objective evidence available to review." (Doc. 20 at 13–14). However, contrary to Plaintiff's assertion, the ALJ's opinion does not find that supplementation of the medical evidence or opinions was required to determine Plaintiff's RFC. Instead, the ALJ properly evaluated all of the medical evidence and opinion statements in view of all of Plaintiff's impairments when determining Plaintiff's RFC.

20 C.F.R. § 404.1545 requires an ALJ is to "consider all of [the claimant's] medically determinable impairments of which [the ALJ] is aware" in determining a claimant's RFC. *Id.* § 404.1545(a)(2). An ALJ must determine the claimant's RFC "based on all of the relevant medical and other evidence" in the record. *Id.* § 404.1545(a)(3).

Plaintiff asserts that the ALJ's RFC determination is unsupported and based on the ALJ's own medical findings instead of record evidence, including the RFC limitation that Plaintiff is limited to "occasional exposure to pulmonary irritants, and occasional exposure to poorly ventilated areas." (*See* Doc. 19-3 at 20). However, it was not legal error for the ALJ here to include respiratory restrictions in Plaintiff's RFC limitations in view of the record evidence documenting Plaintiff's COPD, regardless of whether a medical expert opined on them. "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

Indeed, with regard to Plaintiff's COPD, the ALJ noted that diagnostic test results from October 2017 "showed hyperinflation of the lungs with mild increased perihilar interstitial markings, consistent with COPD." The ALJ further stated that Plaintiff, however, "was not short of breath at the hearing" and concluded that Plaintiff's COPD "is stable with conservative treatment." (Doc. 19-3 at 22). This Court declines Plaintiff's

request to second guess the ALJ's reasonable determination that objective evidence supports a finding of respiratory limitations, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

### d. Further Proceedings

Plaintiff asks this Court for a reversal for immediate award of benefits, or in the alternative, a remand for further administrative proceedings. (Doc. 20 at 10–11). However, because the Court is affirming the ALJ's decision, the Court denies Plaintiff's request for a remand.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 4th day of January, 2022.

*[signature]*
James A. Teilborg
Senior United States District Judge